**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| PASCUAL GOSSELIN, | ) | CASE NO. 1:10-cv-01974 GSA PC |
| Plaintiff, | ) ) | ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY |
| v. | ) ) | COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE |
| J. TILTON, et al., | ) ) | COGNIZABLE |
| Defendants. | ) ) | (ECF No. 1) |
| | ) | RESPONSE DUE WITHIN THIRTY DAYS |

**Screening Order**

**I.   Screening Requirement**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed has consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636 (c).

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

**II.    Plaintiff's Claims**

Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at CSP Corcoran, brings this civil rights action against defendant correctional officials employed by the CDCR at CSP Corcoran. Plaintiff names the following individual defendants: Warden D. Adams; Administrative Officer D. Leon; Captain M. Jennings; Lt. R. Hubach; Sergeant J. Tabor; Sgt. D. Latraille. Plaintiff also names CDCR Secretary James Tilton.

Plaintiff's claims in this action stem from an attempt to strip search Plaintiff on the prison yard. On March 15, 2008, during yard recall, Plaintiff was ordered to "strip out" in the outdoor yard cage. Plaintiff alleges that the cage was "filthy . . . filled with insects and bird feces and in plain view of a yard of inmates including staff of the opposite sex." Plaintiff told staff that he was willing to submit to a strip search indoors in the unit holding cages "to afford some measure of privacy and dignity." Plaintiff explained to staff that the inmates on morning yard were stripped searched indoors. Plaintiff's request was denied, and Plaintiff was told that he would not leave the outside cage until he submitted to a strip search.

Plaintiff alleges that he was left outside in the cold weather from 3:30 p.m. until 4:30 a.m., as he would not submit to a strip search. At some point, Plaintiff requested a sack lunch, which was denied by Sgt. Vogel, who told Plaintiff that he would not get a sack lunch until he submitted to a strip search.

Plaintiff further alleges that while he was on the exercise yard, Lt. Hubach "ordered the complete removal of all my personal and state property, (i.e. state issue clothing, sheets, blankets, toilet papery, hygiene, inter alia.)" Plaintiff alleges that "there was no notification, disciplinary hearing that constituted the taking of my property." Plaintiff alleges that his property was taken in retaliation for his refusal to submit to a strip search.

At 4:30 a.m. on March 16, 2008, Plaintiff was forced to submit to a strip search. Plaintiff alleges that the following occurred:

> At approximately 4:30 a.m., on March 16, 2008,, . . . Lt. Hubach ordered unlawfully and in violation of prison policy the use of unnecessary and excessive force against me, for the sole purpose of forcing me to perform an undignified and degrading public strip search. (This authorization order was given by D. Leon. (A.O.).
>
> Seconds after Lt. Hubach's order, Sgt. Latraille and Sgt. Tabor commenced a vicious and relentless attack on Plaintiff with the use of pepper spray. A total of (9) canisters from (O.C. MK 9; O.C. MK 46; O.C. Mk 505) were implemented against Plaintiff.
>
> Plaintiff's entire body, face, back, legs, genitals and anus were completely saturated with multiple and prolonged burst of toxic chemicals. The sudden and drastic change in temperature on my body from cold to burning was brutal. My body was completely on fire!
>
> When Plaintiff could no longer tolerate the burning, he submitted to the degrading practice Defendants desired, there after Plaintiff was stripped naked, and escorted naked to the front of Building 4B3R, where I was to be decontaminated, only to find to my horror that I would be sprayed with a garden hose for (60 seconds), outside in the cold weather, unsuccessfully decontaminating my body of the toxic chemicals.
>
> Plaintiff was then placed in his cell, which was stripped clean of all articles of necessity only a mattress was left. Plaintiff could not see, his breathing was irratic [sic], heart pounding, body twitching uncontrollably due to the effects of the toxic chemicals. Plaintiff attempted to wash himself but had no soap, nor any other means to decontaminate him. Plaintiff was left in his cell burning, on fire for three days. At no time was a shower given as mandated by prison policy.
>
> On March 16, 2008, at the passing out of the (a.m. breakfast meal) Plaintiff advised 4B3R floor staff that his entire body was on fire that he needed to be properly decontaminated. Staff(s) response was (our supervisors said no). Plaintiff further explained that if that was the case could he have a piece of state soap to clean himself? Staff(s) response was (our supervisors said you guys don't have shit coming). Plaintiff then asked I need a spoon and toilet paper to eat my meal. Staff stated (we told you no already) and left.

3

Plaintiff sets forth claims of unreasonable search, excessive force, unconstitutional conditions of confinement and supervisory liability.

### A.  Unreasonable Search

Prisoners, despite their conviction and confinement, do not forfeit all constitutional rights. Bell v. Wolfish, 441 U.S. 520, 545 (1979). Nevertheless, prisoner's constitutional rights are subject to substantial limitations and restrictions in order to allow prison officials to achieve legitimate correctional goals and maintain institutional security. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Bell, 441 U.S. at 546-47. While inmates have a right to be free from unreasonable search and seizure, the reasonableness of a particular search must be considered in the prison context. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

Here, Plaintiff's allegations indicate that he was directed to submit to a strip search in an outdoor yard cage, as opposed to inside the rotunda. Plaintiff alleges that the search was conducted "in plain view" of female officers. A prisoner's legitimate expectation of bodily privacy from persons of the opposite sex is extremely limited. Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993). Although Plaintiff has an interest in shielding his unclothed body from persons of the opposite sex, strip searches that involve frequent or casual observation by members of the opposite sex or where observation is from a distance do not unreasonably infringe upon the prisoner's privacy rights. Michenfelder, 860 F.2d at 333-334. Grummet v. Rushen, 779 F.2d 491 (9th Cir. 1985). Plaintiff's allegations fail to demonstrate that any observation by members of the opposite sex are not restricted by distance or casual in nature and therefore fails to state a cognizable claim. Grummet, 779 F.2d at 495-96.

### B.  Excessive Force

Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 320-321 (1986)). Factors relevant to the analysis are the need for the application of force, the relationship between the need and the amount of force that was used and the extent of the injury inflicted. Whitley, 475 U.S. at 321. Other factors to be considered are the extent of the threat

to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Id. The infliction of pain in the course of a prison security measure "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied was unreasonable, and hence unnecessary." Id. at 319. Prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 321-322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

As to Defendants Latraille and Tabor, Plaintiff has alleged facts that, taken as true, state a claim for relief. Plaintiff has alleged that because he refused to submit to a strip search, Sgt. Latraille and Sgt. Tabor emptied nine cans of pepper spray into the holding cage as a result of Plaintiff's refusal to submit to the search.

Plaintiff alleges that Lt. Hubach "ordered unlawfully and in violation of prison policy the use of unnecessary and excessive force against me, for the sole purpose of forcing me to perform an undignified and degrading public strip search." Plaintiff alleges that Lt. Leon authorized the order directing the use of force on Plaintiff. These allegations fail to state a claim for relief. That Lt. Hubach ordered the use of force after several hours of non-compliance by Plaintiff does not state a claim. Plaintiff fails to allege facts to support his conclusory allegation that Lt. Hubach ordered the use of excessive force, as opposed to the use of force. In order to hold Defendants Hubach and Leon liable, Plaintiff must allege facts indicating personal participation in the use of excessive force. Defendants can not be liable merely on the ground that they ordered the use of force to gain compliance with an order.

### C. Conditions of Confinement

Plaintiff alleges that the yard cage where the strip search was conducted was filthy and unsanitary, due to its being outside. Plaintiff alleges that Defendants were deliberately indifferent by depriving him of food and leaving him exposed to the elements while he refused to comply with the ordered strip search. While Plaintiff alleges that Defendants were deliberately indifferent, the allegations in the complaint indicate that Plaintiff was deprived of meals and exposed to the elements

because of his refusal to comply with the orders of correctional officials to comply with the strip search. See Rodriguez v. Briley, 403 F.3d 952, 952-53 (7th Cir. 2005)(("deliberate noncompliance with a valid rule does not convert the consequences that automatically flow from that non-compliance into punishment."); Talib v. Gilley, 138 F.3d 211, 216 (5th Cir. 1998)(as the deprivation was caused by inmate's decision not to comply no violation of the Eighth Amendment occurred).

Plaintiff alleges that he was held outside without meals and warm clothing because he refused to consent to a strip search that was required by policy. Prison officials were placed in a position of attempting to gain compliance with a lawful order by refusing to provide food or clothing. Given the circumstances confronting prison officials, the attempt to gain compliance with lesser sanctions than the use of force was reasonable. Since the conditions that Plaintiff was subjected to were due to his own actions in failing to comply with prison officials as a protest, the allegations regarding the strip search in an unsanitary yard cage fail to state a cognizable claim.

Plaintiff does, however, allege facts indicating an objectively serious injury regarding the failure to decontaminate Plaintiff. The failure to decontaminate a prisoner following application of pepper spray can support an Eighth Amendment claim under section 1983. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). Plaintiff alleges that he was saturated with pepper spray, ineffectively hosed down, and placed in a cell without being decontaminated. Such allegations, liberally construed, indicate objectively serious injury. Plaintiff fails, however, to allege who placed him in a cell. Plaintiff refers to "defendants" who placed him in a cell and refused to further decontaminate him. The Court can not presume that Plaintiff is referring to any particular Defendants. Plaintiff must specifically identify what each Defendant, by name, did to Plaintiff that constitutes deliberate indifference.

### D. Supervisory Liability

Plaintiff names as Defendants the Secretary of the CDCR, The Warden at CSP Corcoran, Administrative Officer Leon and Captain Jennings. To establish liability under 42 U.S.C. § 1983, "a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 673 (2009). Even under a "deliberate indifference" theory of individual liability, Plaintiff must still allege sufficient facts to

plausibly establish the defendant's "knowledge of" and "acquiescence in" the unconstitutional conduct of his subordinates. Starr v. Baca, 652 F.3d 1202, 1206-07 (9th Cir. 2011). Plaintiff's "bald" and "conclusory" allegations are insufficient to establish individual liability under 42 U.S.C. § 1983. See Iqbal, 556 U.S. at 569-72.

### III.  **Conclusion and Order**

Plaintiff's complaint states a claim under the Eighth Amendment against Defendants Latraille and Tabor for use of excessive physical force. However, the complaint does not state any other cognizable claims. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will dismiss the other claims and defendants, and will forward to Plaintiff two summonses and two USM-285 forms for completion and return. Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights, Hydrick, 500 F.3d at 987-88. With respect to defendants like Warden Clark, "there is no pure *respondeat superior* liability under § 1983, [and] a supervisor [may only be held] liable for the constitutional violations of subordinates 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" Id. at 988 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (citations omitted).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567

(9th Cir. 1987), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 15-220.  Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." <u>King</u>, 814 F.2d at 567 (citing to <u>London v. Coopers & Lybrand</u>, 644 F.2d 811, 814 (9th Cir. 1981)); <u>accord</u> <u>Forsyth</u>, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send to Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Latraille and Tabor for use of excessive physical force.

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated:   September 25, 2012**                          /s/ Gary S. Austin
                                                    UNITED STATES MAGISTRATE JUDGE